# Attachment 1

Attachment 1

IN THE CIRCUIT COURT FOR Baltimore City
(City or County)

# CIVIL - NON-DOMESTIC CASE INFORMATION REPORT

## DIRECTIONS

***Plaintiff***: This Information Report must be completed and attached to the complaint filed with the Clerk of Court unless your case is exempted from the requirement by the Chief Judge of the Court of Appeals pursuant to Rule 2-111(a).

***Defendant***: You must file an Information Report as required by Rule 2-323(h).

***THIS INFORMATION REPORT CANNOT BE ACCEPTED AS A PLEADING***

**FORM FILED BY:** ☒PLAINTIFF ☐DEFENDANT **CASE NUMBER** ______ (Clerk to insert)

**CASE NAME:** Kohl Falling (Plaintiff) vs. Baltimore City Dept. of Transportation (Defendant)

PARTY'S NAME: Kohl Falling PHONE: 443-253-4588

PARTY'S ADDRESS: 615 Swann Ave., Alexandria, VA 22301

PARTY'S E-MAIL: fallinke@gmail.com

**If represented by an attorney:**

PARTY'S ATTORNEY'S NAME: Stacie Reimer PHONE: 202-603-0957

PARTY'S ATTORNEY'S ADDRESS: 1828 L St NW, Suite 600, Washington DC 20036

PARTY'S ATTORNEY'S E-MAIL: staciereimer@dhalilaw.com

**JURY DEMAND?** ☒Yes ☐No

**RELATED CASE PENDING?** ☐Yes ☒No If yes, Case #(s), if known: ______

**ANTICIPATED LENGTH OF TRIAL?:** ____ hours 3 days

## PLEADING TYPE

**New Case:** ☒Original ☐ Administrative Appeal ☐ Appeal

**Existing Case:** ☐ Post-Judgment ☐ Amendment

*If filing in an existing case*, skip Case Category/ Subcategory section - go to Relief section.

## IF NEW CASE: CASE CATEGORY/SUBCATEGORY (*Check one box.*)

**TORTS**
☐ Asbestos
☐ Assault and Battery
☐ Business and Commercial
☐ Conspiracy
☐ Conversion
☐ Defamation
☐ False Arrest/Imprisonment
☐ Fraud
☐ Lead Paint - DOB of Youngest Plt: ______
☐ Loss of Consortium
☐ Malicious Prosecution
☐ Malpractice-Medical
☐ Malpractice-Professional
☐ Misrepresentation
☐ Motor Tort
☐ Negligence
☐ Nuisance
☐ Premises Liability
☐ Product Liability
☐ Specific Performance
☐ Toxic Tort
☐ Trespass
☐ Wrongful Death

**CONTRACT**
☐ Asbestos
☐ Breach
☐ Business and Commercial
☐ Confessed Judgment (Cont'd)
☐ Construction
☐ Debt
☐ Fraud

☐ Government
☐ Insurance
☐ Product Liability

**PROPERTY**
☐ Adverse Possession
☐ Breach of Lease
☐ Detinue
☐ Distress/Distrain
☐ Ejectment
☐ Forcible Entry/Detainer
☐ Foreclosure
  ☐ Commercial
  ☐ Residential
  ☐ Currency or Vehicle
  ☐ Deed of Trust
  ☐ Land Installments
  ☐ Lien
  ☐ Mortgage
  ☐ Right of Redemption
  ☐ Statement Condo
☐ Forfeiture of Property / Personal Item
☐ Fraudulent Conveyance
☐ Landlord-Tenant
☐ Lis Pendens
☐ Mechanic's Lien
☐ Ownership
☐ Partition/Sale in Lieu
☐ Quiet Title
☐ Rent Escrow
☐ Return of Seized Property
☐ Right of Redemption
☐ Tenant Holding Over

**PUBLIC LAW**
☐ Attorney Grievance
☐ Bond Forfeiture Remission
☐ Civil Rights
☐ County/Mncpl Code/Ord
☐ Election Law
☐ Eminent Domain/Condemn.
☐ Environment
☐ Error Coram Nobis
☐ Habeas Corpus
☐ Mandamus
☐ Prisoner Rights
☐ Public Info. Act Records
☐ Quarantine/Isolation
☐ Writ of Certiorari

**EMPLOYMENT**
☐ ADA
☐ Conspiracy
☒ EEO/HR
☐ FLSA
☐ FMLA
☐ Workers' Compensation
☒ Wrongful Termination

**INDEPENDENT PROCEEDINGS**
☐ Assumption of Jurisdiction
☐ Authorized Sale
☐ Attorney Appointment
☐ Body Attachment Issuance
☐ Commission Issuance

☐ Constructive Trust
☐ Contempt
☐ Deposition Notice
☐ Dist Ct Mtn Appeal
☐ Financial
☐ Grand Jury/Petit Jury
☐ Miscellaneous
☐ Perpetuate Testimony/Evidence
☐ Prod. of Documents Req.
☐ Receivership
☐ Sentence Transfer
☐ Set Aside Deed
☐ Special Adm. - Atty
☐ Subpoena Issue/Quash
☐ Trust Established
☐ Trustee Substitution/Removal
☐ Witness Appearance-Compel

**PEACE ORDER**
☐ Peace Order

**EQUITY**
☐ Declaratory Judgment
☐ Equitable Relief
☐ Injunctive Relief
☐ Mandamus

**OTHER**
☐ Accounting
☐ Friendly Suit
☐ Grantor in Possession
☐ Maryland Insurance Administration
☐ Miscellaneous
☐ Specific Transaction
☐ Structured Settlements

## IF NEW OR EXISTING CASE: RELIEF (Check All that Apply)

| | | | |
|---|---|---|---|
| ☐ Abatement | ☒ Earnings Withholding | ☐ Judgment-Interest | ☐ Return of Property |
| ☐ Administrative Action | ☐ Enrollment | ☐ Judgment-Summary | ☐ Sale of Property |
| ☐ Appointment of Receiver | ☐ Expungement | ☐ Liability | ☐ Specific Performance |
| ☐ Arbitration | ☐ Findings of Fact | ☐ Oral Examination | ☐ Writ-Error Coram Nobis |
| ☐ Asset Determination | ☐ Foreclosure | ☐ Order | ☐ Writ-Execution |
| ☐ Attachment b/f Judgment | ☐ Injunction | ☐ Ownership of Property | ☐ Writ-Garnish Property |
| ☐ Cease & Desist Order | ☐ Judgment-Affidavit | ☐ Partition of Property | ☐ Writ-Garnish Wages |
| ☐ Condemn Bldg | ☒ Judgment-Attorney Fees | ☐ Peace Order | ☐ Writ-Habeas Corpus |
| ☐ Contempt | ☐ Judgment-Confessed | ☐ Possession | ☐ Writ-Mandamus |
| ☒ Court Costs/Fees | ☐ Judgment-Consent | ☐ Production of Records | ☐ Writ-Possession |
| ☒ Damages-Compensatory | ☐ Judgment-Declaratory | ☐ Quarantine/Isolation Order | |
| ☒ Damages-Punitive | ☐ Judgment-Default | ☒ Reinstatement of Employment | |

*If you indicated Liability above*, mark one of the following. This information is not an admission and may not be used for any purpose other than Track Assignment.

☐ Liability is conceded. ☐ Liability is not conceded, but is not seriously in dispute. ☐ Liability is seriously in dispute.

## MONETARY DAMAGES (Do not include Attorney's Fees, Interest, or Court Costs)

☐ Under $10,000 ☐ $10,000 - $30,000 ☐ $30,000 - $100,000 ☒ Over $100,000

☒ Medical Bills $ 100,000 ☒ Wage Loss $ 500,000 ☐ Property Damages $____

## ALTERNATIVE DISPUTE RESOLUTION INFORMATION

Is this case appropriate for referral to an ADR process under Md. Rule 17-101? (Check all that apply)

| | | | | | |
|---|---|---|---|---|---|
| A. Mediation | ☒ Yes | ☐ No | C. Settlement Conference | ☒ Yes | ☐ No |
| B. Arbitration | ☐ Yes | ☒ No | D. Neutral Evaluation | ☒ Yes | ☐ No |

## SPECIAL REQUIREMENTS

☐ If a Spoken Language Interpreter is needed, check here and attach form CC-DC-041

☐ If you require an accommodation for a disability under the Americans with Disabilities Act, check here and attach form CC-DC-049

## ESTIMATED LENGTH OF TRIAL

*With the exception of Baltimore County and Baltimore City, please fill in the estimated LENGTH OF TRIAL.*

*(Case will be tracked accordingly)*

☐ 1/2 day of trial or less ☐ 3 days of trial time

☐ 1 day of trial time ☐ More than 3 days of trial time

☐ 2 days of trial time

## BUSINESS AND TECHNOLOGY CASE MANAGEMENT PROGRAM

*For all jurisdictions, if Business and Technology track designation under Md. Rule 16-308 is requested, attach a duplicate copy of complaint and check one of the tracks below.*

☐ **Expedited**- Trial within 7 months of Defendant's response ☐ **Standard** - Trial within 18 months of Defendant's response

EMERGENCY RELIEF REQUESTED

## COMPLEX SCIENCE AND/OR TECHNOLOGICAL CASE MANAGEMENT PROGRAM (ASTAR)

*FOR PURPOSES OF POSSIBLE SPECIAL ASSIGNMENT TO ASTAR RESOURCES JUDGES under Md. Rule 16-302, attach a duplicate copy of complaint and check whether assignment to an ASTAR is requested.*

☐ **Expedited** - Trial within 7 months of Defendant's response ☐ **Standard** - Trial within 18 months of Defendant's response

***IF YOU ARE FILING YOUR COMPLAINT IN BALTIMORE CITY, OR BALTIMORE COUNTY, PLEASE FILL OUT THE APPROPRIATE BOX BELOW.***

## CIRCUIT COURT FOR BALTIMORE CITY (CHECK ONLY ONE)

| | | |
|---|---|---|
| ☐ | Expedited | Trial 60 to 120 days from notice. Non-jury matters. |
| ☐ | Civil-Short | Trial 210 days from first answer. |
| ☒ | Civil-Standard | Trial 360 days from first answer. |
| ☐ | Custom | Scheduling order entered by individual judge. |
| ☐ | Asbestos | Special scheduling order. |
| ☐ | Lead Paint | Fill in: Birth Date of youngest plaintiff ________. |
| ☐ | Tax Sale Foreclosures | Special scheduling order. |
| ☐ | Mortgage Foreclosures | No scheduling order. |

## CIRCUIT COURT FOR BALTIMORE COUNTY

| | | |
|---|---|---|
| ☐ | Expedited (Trial Date-90 days) | Attachment Before Judgment, Declaratory Judgment (Simple), Administrative Appeals, District Court Appeals and Jury Trial Prayers, Guardianship, Injunction, Mandamus. |
| ☐ | Standard (Trial Date-240 days) | Condemnation, Confessed Judgments (Vacated), Contract, Employment Related Cases, Fraud and Misrepresentation, International Tort, Motor Tort, Other Personal Injury, Workers' Compensation Cases. |
| ☐ | Extended Standard (Trial Date-345 days) | Asbestos, Lender Liability, Professional Malpractice, Serious Motor Tort or Personal Injury Cases (medical expenses and wage loss of $100,000, expert and out-of-state witnesses (parties), and trial of five or more days), State Insolvency. |
| ☐ | Complex (Trial Date-450 days) | Class Actions, Designated Toxic Tort, Major Construction Contracts, Major Product Liabilities, Other Complex Cases. |

10/26/18
Date

1828 L St. NW Suite 600
Address

Washington — DC — 20036
City — State — Zip Code

[signature]
Signature of Counsel / Party

Stacie Reimer
Printed Name

**MARYLAND CIRCUIT COURT**
**BALTIMORE CITY**

| | | |
|---|---|---|
| **Kohl Falling**<br>**14906 Health Center Dr. Apt. 467**<br>**Bowie, MD 20716-1152**<br>**Plaintiff,**<br><br>**vs.**<br>**Baltimore City Department of Transportation**<br>**417 E. Fayette Street, 5th Floor**<br>**Baltimore, MD 21202**<br><br>**Defendant** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **Case No:__________**<br><br>Civil Complaint for Violation of the Maryland Fair Employment Practices Act.<br><br>**<u>Jury Demand</u>** |

18 OCT ... AM 11: 37
DIVISION

## INTRODUCTION

Plaintiff Ms. Kohl Falling, by and through her undersigned counsel Dhali & Reimer PLLC file this Civil Complaint for sex discrimination, hostile work environment and retaliation under the Maryland Fair Employment Practices Act (MFEPA).

Falling is an African-American female. On or about November 14, 2011, Falling began her employment with the Baltimore City Department of Transportation as the Northwest Transportation Liaison Officer. She earned a salary of roughly $45,000.00 per year.

In August 2016, Falling's office work space was vandalized while she was at lunch with sexually explicit and violent drawings and messages. Falling immediately alerted her supervisor and human resources. However, the issue was not addressed. Falling felt unsafe in her workplace and experienced anxiety and stress.

In September 2016, Falling was verbally threatened by the office assistant. The police were called and the office assistant admitted to making the threat. Falling petitioned for and obtained a peace order against the office assistant. At this time, Falling's direct supervisor,

Veronica McBeth, moved Falling's workplace to a building three blocks away and began to treat her differently. This included requiring Falling to keep timesheets, something she was never made to do previously and something her male counterpart was not required to do. Also in September 2016, McBeth attempted to write up the Plaintiff for insubordination. This claim was successfully grieved by the union and was removed from Plaintiff's personnel file.

In November 2016, Falling made a complaint to the union about McBeth's harassing emails and differential treatment. On January 6, 2017, Falling was told to appear for a meeting with McBeth regarding a disciplinary action. Falling was informed that McBeth alleged that she had unexcused absences. Falling explained that she was not tardy, but instead that the nature of her work as a community liaison required her to be in the field often and therefore she was not required to arrive to work at the same time every day. Falling was then unable to access her work email or calendar to be able to prove that she was working in the field during the times in question. McBeth did not follow the normal progressive discipline policy for unexcused absences. The Plaintiff was then terminated on or about January 12, 2017 for alleged tardiness. Falling alleges that the claim of tardiness was pretext for the actual reason for her firing: discrimination and retaliation based on sex.

## PART I. PARTIES

1. Ms. Kohl Falling is an African-American female. She began her employment with the Baltimore City Department of Transportation on November 14, 2011 and was terminated from her position on January 12, 2017. Falling is an employee under 42 U.S.C. § 2000(e) *et seq.*, and Maryland State Government Code, Ann, § 20-601 of the Maryland Human Relations Act (MHRA).

2. The Baltimore City Department of Transportation is a department within the City of Baltimore. The City of Baltimore employs a large number of people in Baltimore, Maryland. The Baltimore City Department of Transportation is an employer under 42 U.S.C. § 2000(e) *et seq*., and under Maryland State Government Code, Ann., § 20-601 of the Maryland Human Relations Act.

## PART II. JURISDICTION & VENUE

3. This Court has jurisdiction of this action under Maryland State Government Code, Ann., § 20-601 of the MHRA.
4. Venue is proper in this Court because the plaintiff was employed and terminated by Baltimore City Department of Transportation in Baltimore, Maryland and all the events and allegations contained in this action occurred in Baltimore City, Maryland which is within this Court's jurisdiction.

## PART III. EXHAUSTION OF ADMINISTRATIVE REMEDIES

5. On July 7, 2017, the Plaintiff filed her charge (Form 5) with the Maryland Commission of Civil Rights (MCCR), which was cross filed with the U.S. Equal Employment Opportunity Commission (EEOC) alleging discrimination under the protected categories of sex and retaliation. The charge number is: 531-2017-01952.
6. On July 27, 2018 the U.S. EEOC issued Falling the right to sue on charge number 531-2017-01952. It was received by the Plaintiff on or about August 1, 2018.
7. On October 26, 2018, an action was timely filed with this Court within the 90 day period of filing suit under 42 U.S.C.§ 2000(e)-5(f)(1).
8. The Plaintiff has no further administrative obligations.

## PART IV. STATEMENT OF FACTS

9. Falling is an African-American female.

10. On or about November 14, 2011, she began her employment with the Baltimore City Department of Transportation as the Northwest Transportation Liaison Officer. She earned a salary of roughly $45,000.00 per year.

11. In August 2016, Plaintiff's office working space was vandalized while she was at lunch with sexually explicit and violent drawings and messages.

12. These images and messages included: (1) an explicitly drawn picture of a penis and scrotum, with the words "suck, suck, oh yeah" on Plaintiff's work dry-erase board, (2) the words "suck dis dik bitch" on Plaintiff's work notebook, and (3) an explicitly drawn picture of a penis and scrotum with the words "put it in your butt" on a sticky note attached Plaintiff's computer monitor. (Exhibit. A)

13. Falling immediately took photos of these messages and images.

14. Falling immediately alerted her direct supervisor, Veronica McBeth, Chief of the Transit Division, and the Kathy Litz, human resources (HR) department, about the incident.

15. Falling let McBeth and human resources know that she felt unsafe, attacked on the basis of her sex, and was experiencing a high level of stress and anxiety due to the incident.

16. Due to the severe nature of the situation and the high amount of stress and anxiety that Plaintiff experienced, she requested to leave the workplace in order to regain composure.

17. McBeth and human resources refused Falling's request and she was forced to take her already-accrued vacation leave in order to leave the workplace.

18. McBeth and human resources never addressed the incident or engaged in any follow-up activities afterwards.

19. Falling followed up with McBeth and HR about the incident and still did not receive a response.

20. Falling as a result, felt attacked on the basis of her sex. Falling continued to feel unsafe in her workplace and experienced anxiety and stress.

21. The sexual harassment affected Falling's ability to work and concentrate. Falling was also deeply offended by the unwelcomed sex harassment experienced at work.

22. In September 2016, Falling was verbally threatened by the office assistant who said she was going to have her daughter come to the office and "beat the fuck out of" Falling.

23. Falling felt attacked, harassed and discriminated against on the basis of her sex.

24. The police were called and the office assistant admitted to the police to making the threat.

25. Falling petitioned for and obtained a peace order in Baltimore City District Court against the office assistant.

26. Falling alerted McBeth that she had a peace order against the office assistant due to the threat.

27. The office assistant was not disciplined, in violation of the Baltimore City Workplace Violence Policy.[1]

28. At this time, McBeth moved Falling's workplace to a building three blocks away.

29. This new workplace separated Falling from her work team and placed her in an environment with non-members of her team.

30. Starting at that time and at all times after, Plaintiff had limited in-person interaction with McBeth.

[1] City of Baltimore Workplace Violence Policy, last accessed 10/24/18, available at https://ca.baltimorecity.gov/am/files/am-227-1.pdf.

31. Due to the new workplace, Plaintiff became depressed at work because she had limited interaction with her team members.

32. Falling felt that when McBeth moved her workplace, McBeth and the Defendant had singled her out and retaliated against her on account of her sex because she had complained about the sexually explicit images and verbal violence at work.

33. Also in September 2016, soon after Falling complained about the sexually explicit images and the verbal threat, McBeth wrote the Plaintiff up for insubordination.

34. There were no grounds for this claim and it was successfully grieved by the union.

35. The union stated that the insubordination charge did not meet the guidelines for these types of claims and was therefore removed from the Plaintiff's personnel file.

36. After Falling complained about the sexually explicit images and verbal threat, Falling began to regularly receive harassing emails from McBeth. These emails were written in a harassing tone.

37. In some of the emails McBeth asked Fallings to do unnecessary activities, such as hand deliver documents from the building three blocks away which could be emailed.

38. McBeth would often email Falling to ask superfluous questions and would email her asking her to explain her normal work actions in a micromanaging manner. McBeth did not subject other similarly situated employees to this treatment, including male employees.

39. Also, after Falling complained about the sexually explicit images and the violent threat, McBeth retaliated against her (the Plaintiff) by suddenly requiring Falling to keep daily timesheets, starting in September 2016.

40. Falling was never made to keep timesheets in the previous five years of her employment and no other similarly situated employees were made to keep timesheets. This includes a male employee, Jeffrey Fleming, who also had the position of community liaison.

41. Falling believes that McBeth started to make her keep timesheets in order to retaliate against her when she asserted her workplace rights in relation to sexual harassment and discrimination.

42. Falling complained to the union about McBeth's harassing emails and requested mediation in November 2016.

43. Mediation was not offered and the union representative only stated that they had followed up with management on the complaint.

44. After that complaint was made, Falling feared McBeth would retaliate against her for making a complaint.

45. Because of the stress at work, Falling experienced depression and anxiety.

46. Falling regularly begin seeing a therapist due to these medical conditions.

47. On January 6, 2017, Falling was told to appear for a meeting with McBeth regarding a disciplinary action.

48. McBeth informed the Plaintiff that she had 13 unexcused tardies in December 2016 and January 2017 and was being placed on an immediate three-day suspension without pay.

49. Plaintiff explained that she was not tardy, but instead the nature of her work as a community liaison required her to be in the field often and therefore she was not required to arrive to the work site at the same time every day.

50. This was also the case for all the other community liaison positions, which required them to arrive at work at different times.

51. Other community liaisons would arrive to the office after field work regularly at 10:00 am and some would arrive as late as 12:00 pm.

52. The male community liaison, Jeffrey Fleming, was not required to arrive at the work site at the same time every day and was not written up for tardiness.

53. Plaintiff often worked in the evening hours and early morning hours at locations outside the office.

54. During her tenure, Falling only had one performance review and was rated the highest mark for attendance. Falling also had high marks for job productivity.

55. Falling also received numerous instances of verbal positive performance feedback.

56. Up until the time Falling complained about the sexually hostile work environment, the Plaintiff had never been given a negative performance review and had not been written up.

57. During this January 6, 2017, meeting the Plaintiff realized that she was no longer able to access her work email or calendar to prove that she was working in the field during the times in question.

58. The Plaintiff requested access to her email and calendar, but was refused.

59. Throughout the meeting, the dates of the alleged tardiness were changed by McBeth several times.

60. Falling felt alarmed that McBeth could not actually agree or settle on the dates she was alleged of being tardy.

61. Baltimore City Department of Transportation has a progressive discipline policy.

62. McBeth did not follow the normal progressive discipline policy for tardiness.

63. According to the progressive discipline policy, an employee who is tardy should first be given counseling

64. According to the progressive discipline policy, an employee should only be recommended for termination after additional warnings have been given, such as verbal warnings, written warnings and suspensions.

65. McBeth wrongfully stated in her termination letter to Falling that had she known of Falling's lateness, she "would have had an opportunity to issue progressive discipline."

66. McBeth failed to use progressive discipline for Falling's alleged tardiness between December 2016 and January 2017.

67. Instead, the Plaintiff was terminated on or about January 12, 2017 for alleged tardiness.

68. The alleged tardiness is pretext and false, because the actual reasons for the Plaintiff's termination were her September 2016 and November 2016 protected activities for complaining about a sexually hostile work environment.

69. According to Civil Service Commission Rule 56 and Baltimore City Charter Art. VII, Section 100, the Plaintiff should only have been terminated for "just cause."

70. Since August 2016, Falling has suffered from anxiety, depression, and stress, all caused by the workplace discrimination and retaliation she suffered. The Plaintiff also suffered from numerous health effects, including a compromised immune system which led to multiple infections, insomnia, nausea, and gastro-intestinal issues.

71. Plaintiff has various medical bills from visits to Urgent Care centers due to the health effects of the harassment and retaliation.

72. Since the Plaintiff was wrongfully terminated, she believes she has been rejected for other job opportunities because of her termination record with the Baltimore City

Department of Transportation. This has impacted her ability to support herself and her family, which has led to a great deal of emotional distress and financial difficulty.

## PART V. CAUSE OF ACTIONS

### COUNT I: SEX DISCRIMINATION UNDER MFEPA
### MD. Government Code. Ann., § 20-601

73. Plaintiff alleges and incorporates all the paragraphs above.

74. Defendant intentionally discriminated against Plaintiff on account of her sex, female, in violation of the Maryland Fair Employment Practices Act (MFEPA), Maryland State Government Code, Ann., § 20-601 of the Maryland Human Rights Act (MHRA), by denying her equal terms and conditions of employment and by terminating her.

75. Plaintiff's discrimination was not experienced by other male employees of the Defendant.

76. Defendant's intentionally interfered with Plaintiffs contract of employment because of their discriminatory animus towards her sex. Defendants acted in a willful and wanton manner and in callous disregard for the federally-protected rights of the Plaintiff. Defendant discriminated against Plaintiff on the basis of sex when it subjected her to sexually explicit images in the workplace and violent verbal threats and when it treated Plaintiff differently on account of her sex through making her keep timesheets, moving her office location, and sending her harassing emails.

77. As a direct and proximate result of this injury from the Defendant, Plaintiff has suffered and is suffering considerable injury, including but not limited to loss of substantial past and future salary and income, benefits and other privileges and entitlements of employment, loss of professional status and career enhancing and advancement opportunities and loss of retirement savings and benefits. The Plaintiff has also suffered from emotional distress arising from the loss of her job, the damage to her professional

reputation and the embarrassment, humiliation, and indignity arising from the discriminatory conduct of Defendant and/or agents or employees acting on its behalf, and the stress and anxiety caused by her wrongful termination and resultant financial hardship.

78. As a consequence of Defendant's action, it is additionally liable for attorney's fees and other costs and interest in pursuit of this litigation.

**COUNT II: HOSTILE WORK ENVIRONMENT ON THE BASIS OF SEX UNDER MFEPA**

79. Plaintiff alleges and incorporates all the above allegations.

80. Defendant was at all times an employer of Plaintiff for purposes of MFEPA.

81. Plaintiff alleges that one or more of the agents, managers, supervisors, and/or employees of Defendant, acting on its behalf, created a hostile work environment based on her sex when they engaged in unwelcome sexual conduct and harassment which was subjectively offensive to the Plaintiff and objectively severe or pervasive. The sex harassment made it difficult for the Plaintiff to work and concentrate.

82. Defendant had knowledge of Plaintiff's complaints of sexual harassment and assaults, and ultimately failed to take corrective action to address Plaintiff's concerns.

83. Plaintiff was subjected to a hostile work environment when three sexually explicit messages/drawings were left at her work station. Plaintiff complained to Defendant immediately and Defendant failed to address the behavior or take any corrective actions.

84. Plaintiff was subjected to a hostile work environment when the office assistant made a violent and threatening remark to her which contained a sexual term. Plaintiff complained to Defendant immediately and Defendant failed to address the behavior or take any corrective actions.

85. As a direct and proximate result of this injury from the Defendant, Plaintiff has suffered and is suffering considerable injury, including but not limited to loss of substantial past and future salary and income, benefits and other privileges and entitlements of employment, loss of professional status and career enhancing and advancement opportunities and loss of retirement savings and benefits. Plaintiff has also suffered from emotional distress arising from the loss of her job, the damage to her professional reputation and the embarrassment, humiliation, and indignity arising from the sexual harassment and assaults of Defendant and/or agents or employees acting on its behalf, and the stress and anxiety caused by her wrongful termination and resultant financial hardship.

86. As a consequence of Defendant's actions, it is additionally liable for attorney's fees and other costs and interest in pursuit of this litigation.

## COUNT III: RETALIATION ON THE BASIS OF SEX UNDER MFEPA

87. Plaintiff alleges and incorporates all the above allegations.

88. Defendant was at all times an employer of Plaintiff for purposes of MFEPA.

89. Plaintiff alleges that one or more of the agents, managers, supervisors, and/or employees of Defendant, acting on its behalf, retaliated against her based on her sex after the Plaintiff engaged in protected activities of complaining about sex discrimination and hostile work environment for the periods August 2016 - November 2016.

90. After Plaintiff engaged in protected activities from August 2016-November 2016, Defendant retaliated against the Plaintiff by moving her to a secluded work location, requiring her to submit timesheets beyond the requirements of similarly situated

employees, sending Plaintiff harassing emails, charging Plaintiff with insubordination and ultimately firing Plaintiff in January 2017, for the pretextual reason of tardiness.

91. Because of the close proximity of the protected activities and the adverse employment actions by Defendant, including termination, a causal link can be established to prove retaliation which would dissuade a reasonable person from making or supporting a charge of discrimination. *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006).

## PART VI. RELIEF SOUGHT

WHEREFORE, the Plaintiff Ms. Kohl Falling respectfully requests this Court award economic damages to be proved at trial, and in addition:

A. Enter judgment for the Plaintiff against Defendant Baltimore City Department of Transportation on all Counts, in an amount no less than one million dollars ($1,000,000.00)

B. Declare that the conduct of Defendant is in violation of the Maryland Fair Employment Practices Act.

C. Award the Plaintiff reinstatement, punitive damages, full back pay and front pay, including salary, benefits, entitlements, loss of professional status and career-enhancing opportunities, bonuses, cash awards, loss of retirement savings and benefits and other remuneration and privileges of employment retroactive to the date of any unlawful employment action found to have occurred in this case.

D. Award Plaintiff compensatory damages for emotional distress, injuries and loss;

E. Award Plaintiff pecuniary and out of pocket expenses;

F. Order Defendant to pay all reasonable attorney's fees, court costs, and expenses incurred by Plaintiff as a result of Defendants' actions and inactions, as well as pre-judgment and post-judgment interest; and

G. Order such other equitable and legal relief as the Court deems just and appropriate.

## PART VII. JURY TRIAL DEMANDED

Plaintiff demands a jury trial for this action.

Respectfully Submitted,

/s/Stacie Reimer
Dhali & Reimer PLLC
Maryland Attorney No.: 1406170242
1828 L St. NW, Suite 600
Washington D.C. 20036
T: (202) 603-0957. F: (202) 351-0518
Email: staciereimer@dhalilaw.com
October 26, 2018

## CERTIFICATE OF SERVICE

A copy of this Complaint was delivered by hand to the Baltimore City Circuit Court Civil Clerk on October 26, 2018.

/s/Stacie Reimer



EXHIBIT





Sent from my iPhone